## YOUTSEY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1899.)

### No. 649.

1. CRIMINAL LAW—PRESENT INSANITY OF DEFENDANT—TIME AND MODE OF PRESENTING THE ISSUE.

The question whether a defendant charged with a criminal offense is in a fit condition mentally to be placed on trial may be raised at any time, and in any appropriate manner; and the fact that the objection is taken in an application for continuance, which is also based on other grounds, does not relieve the court of the duty of giving the question of his mental soundness due consideration, and trying it in some appropriate form of proceeding.

2. SAME—PROCEDURE IN FEDERAL COURTS.

The federal courts are governed by the practice at common law as to the method of trying an issue of the present insanity of a defendant, where the objection is urged in bar of his trial; and by such practice the defendant is not entitled to a jury as a matter of right, but the judge may, in his discretion, call a jury, or determine the issue himself, upon his own inspec-

tion of the defendant, and such testimony as he may choose to take, or he may direct the question to be tried by the jury with the plea of not guilty.

**8. SAME—RIGHT OF DEFENDANT TO HAVE ISSUE TRIED.**

An application for a continuance by counsel for a defendant stated that he was suffering from the effects of a recent attack of epilepsy, and that there was danger that the excitement of a trial at that time would bring on another attack. It further contained a showing, supported by affidavits of counsel and of reputable physicians, that defendant was a confirmed epileptic, and that recent attacks had so impaired his mind and memory that he was unable to recall the facts of the transactions involved in the charges against him, so as to assist his counsel in the preparation of his defense, or to testify as a witness, or even to remember events from day to day, and asked that an inquiry be instituted by the court to determine whether the defendant was in such condition mentally that he should be subjected to trial at that time. *Held* that, in addition to the mere question of continuance on account of defendant's physical condition, such application presented an issue as to his ability to make a rational defense, which went to the fundamental right of the court to try the main issue of not guilty, and should have been tried and determined by some appropriate proceeding.

**4. SAME—REVIEW ON APPEAL—FACTS NOT SHOWN BY RECORD.**

In such case an order merely denying the continuance, in the absence of anything else in the record relating to the subject, did not raise a presumption that such issue was considered or determined.

In Error to the Circuit Court of the United States for the District of Kentucky.

The plaintiff in error, Thomas B. Youtsey, cashier of the First National Bank of Newport, Ky., was indicted for violation of section 5209 of the Revised Statutes of the United States. The indictment embraced 27 counts. He was convicted upon the first 25 counts, and acquitted, by direction of the court, upon the twenty-sixth and twenty-seventh counts. Eighteen of the counts upon which he was convicted embraced but three distinct transactions, charged in different ways, and were for the embezzlement or willful abstraction or willful misapplication of assets of the bank, with intent to defraud or injure the bank. The remaining seven counts were for making, or causing to be made, false entries on the books of the bank, or in the reports to the comptroller, with intent to deceive the officials and directors of the bank, or any agent of the comptroller appointed to examine the affairs of said bank. Each of these seven counts included a distinct transaction. The indictment was returned into court September 20, 1897. On the same day the accused came into court, and entered into a recognizance to appear for trial November 22, 1897. On the latter date he came not, but made default, his counsel filing affidavits that his mental and physical condition was such that he was unable to appear. Upon the joint application of the government and the defendant, the cause was thereupon continued and set for hearing March 1, 1898. On the latter day he appeared, waived arraignment, and entered a plea of "Not guilty." Thereupon his counsel filed the following petition, in these words: "Now come counsel for defendant, and respectfully represent to the court that this cause should not be tried at this term of the court, but the same should be continued, for the reason that, in the judgment of counsel, the defendant is not in a condition, mentally or physically, to undergo the ordeal of a trial of this cause at this time. They further represent to the court that the defendant is a confirmed epileptic; that since November 22, 1897, at which time this cause was last set for trial, and at which time the cause was continued, the defendant then suffered from a severe attack of epilepsy. The defendant has had another severe attack of epilepsy, and counsel state, in consultation with said defendant, and in preparation for trial of this cause at this term, the impairment of the memory of the defendant has been so manifest to them, and his condition, mentally and physically, is such, as, in their judgment, to warrant this application to the court for a continuance of this cause. They submit with this application the affidavit of three physicians, each of whom is

personally acquainted with the defendant, and has prescribed for him for said epileptic attacks, and each of whom believes that the excitement resulting from the ordeal of this trial may possibly or probably result in another attack of epilepsy. Counsel for defendant desire to submit the mental and physical condition of this defendant to this court for such examination by competent physicians, and otherwise, as the court may deem best to make in order to determine whether the defendant should be subjected to a trial of this cause at this term. They further state that in the preparation of this cause for trial the impairment of the memory of the defendant has been such as to seriously interfere with its preparation; that he has been unable, by reason of said impairment of memory, to furnish counsel with any recollection of many of the vital transactions covered by said indictment, which ought to be personally within his knowledge: that this impairment of memory is such that in the opinion of counsel, from personal contact with him, and examination of the offenses charged in said indictment, he is unable to properly answer said charges, and that the impairment of said memory has been manifest from day to day, in the preparation of said cause for trial, in the failure of the defendant to remember transactions from day to day; and such impairment of memory and mental and physical condition warrant counsel, in their judgment, in making this application to the court for the continuance of the cause. Wherefore counsel pray, in view of the mental and physical condition of the defendant, as above stated, this cause be continued; and they further state that this application is not made for the purpose of delay, or to defeat the administration of justice, but solely on account of the mental and physical condition of the defendant as aforesaid, all of which is respectfully submitted." This was sworn to by one of the counsel. In support of this, the affidavits of three physicians were filed, the most important of which was that of C. Kearns, M. D., which was as follows: "Dr. Chas. Kearns, being duly sworn, says that he is a physician in active practice in the city of Covington, Kentucky; that he is acquainted with the disease of epilepsy, its symptoms and its results; that he has been called to attend, professionally, Thomas B. Youtsey, on several occasions within the last year; that he knows the said Thomas B. Youtsey to be a confirmed epileptic; that he has examined him, to wit, on the 26th day of February, 1898, and finds that, as a result of his numerous attacks of epilepsy, his memory and judgment have become permanently impaired, that his memory is not reliable as to ordinary occurrences of the past, and that, in the judgment of this affiant, he is not in a condition to testify in behalf of himself as to business and other transactions in which he has been engaged. Affiant further says that, in the present condition of said Thomas B. Youtsey, the excitement and strain of a trial may possibly bring on an attack of epilepsy." The only journal entry touching this matter is in these words: "This cause coming on to be heard, came the defendant (R. W. Nelson, of counsel), and filed a motion for the continuance of this cause; said motion being supported by the affidavits of Dr. Chas. Kearns, Dr. F. A. Davis, and Dr. E. M. Keeney. Argument was heard upon said motion, and the court, being now advised, overruled same, to which ruling of the court, defendant by counsel, comes and excepts." The trial was then proceeded with, but was interrupted for several days by reason of an epileptic attack suffered by the prisoner pending the trial, which necessitated an adjournment. The defendant did not testify in his own behalf. The trial resulted in a verdict of guilty upon the first 25 counts, upon which the court pronounced a judgment. For charge to jury see 91 Fed. 864.

A. C. Cassatt and Thomas McDougall, for plaintiff in error.
Wm. M. Smith, for the United States.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The primal question which confronts the court arises upon the objection interposed by counsel for the plaintiff in error to a trial of the

accused on account of his then nonsane mind and memory. The application was nominally for continuance, and the record entry simply shows that a continuance was refused. "The action of a trial court upon an application for a continuance is purely a matter of discretion, and not subject to review by this court unless it be clearly shown that such discretion has been abused." Isaacs v. U. S., 159 U. S. 487, 16 Sup. Ct. 51. So far as this application and motion for a continuance were based upon the fact that the prisoner was a confirmed epileptic, and that his counsel and medical advisers apprehended that the excitement and strain of a prolonged trial might induce another epileptic attack, it was addressed to the enlightened humanity and sound discretion of the lower court. The application, in that aspect, did not show any present inability to attend the trial, and promised no hope that any future trial would be attended by any less risk to the health or life of the accused. Under such circumstances, it was no abuse of discretion to proceed with the trial. But the petition of the counsel involved much more than a mere continuance on account of the physical condition of the defendant. In substance and legal effect, it also presented an issue of present insanity as a bar to any trial while that condition continued, and prayed a continuance for that reason, also. The blending of such an issue in bar of a trial with an application for a continuance upon that and another ground should not prejudice the right of the accused to have that issue considered and disposed of in some form of trial known to the law. The statutes of the United States present no mode for the presentation and trial of an issue of present insanity, when presented in bar of an arraignment, trial, judgment, or execution, and we must look to the common law for guidance in practice. It is fundamental that an insane person can neither plead to an arraignment, be subjected to a trial, or, after trial, receive judgment, or, after judgment, undergo punishment. In 1 Hale, P. C. 34, 35, it is said:

"If a man in his sound memory commits a capital offense, and before his arraignment he becomes absolutely mad, he ought not by law to be arraigned during such frenzy, but be remitted to prison until that incapacity be removed. The reason is, because he cannot advisedly plead to the indictment. * * * And if such person of nonsane memory after his plea, and before his trial, become of nonsane memory, he shall not be tried; or, if, after his trial, he becomes of nonsane memory, he shall not receive judgment, or, if after judgment he becomes of nonsane memory, his execution shall be spared; for were he of sound memory, he might allege somewhat in stay of judgment or execution."

To the same effect are all the common-law authorities. 4 Bl. Comm. 24, 25; 2 Bish. Cr. Proc. § 666; Frith's Case, 22 How. St. Tr. 307; Rex v. Pritchard, 7 Car. & P. 303; Bonds v. State, Mart. & Y. 143; Crocker v. State, 60 Wis. 556, 19 N. W. 435; Taffe v. State, 23 Ark. 34; Freeman v. People, 4 Denio, 9; Underwood v. People, 32 Mich. 1; Nobles v. Georgia, 168 U. S. 398, 18 Sup. Ct. 87; Guagando v. State, 41 Tex. 626; State v. Reed, 41 La. Ann. 581, 7 South. 132.

While an insane man cannot even plead to an indictment, and counsel, having reason to suppose their client too insane to stand a trial, should interpose and make such objection before arraignment, yet it is not technically waived by failure to object before arraign-

ment, and the defense may be interposed after arraignment in bar of a trial. In 1 Hale, P. C. 35, it is said:

"In case a man in a frenzy happens by some oversight or by the means of the gaoler to plead to his indictment, and is put on his trial, and it appear that he is mad, the judge, in his discretion, may discharge the jury of him, and remit him to gaol, to be tried after the recovery of his understanding."

In re Kinlock, 18 How. St. Tr. 411; Green v. State, 88 Tenn. 634, 14 S. W. 489; Reg. v. Berry, 1 Q. B. Div. 447.

In the case last cited, a deaf mute was put on his trial. The trial court put two questions to the jury: First, whether they found the prisoner guilty on the indictment; secondly, whether, in their opinion, the prisoner was capable of understanding, and had understood, the nature of the proceedings. The verdict was, "Guilty," but that the defendant was not capable of understanding, "and, as a fact, has not understood, the nature of the proceedings." Judgment was reserved until a case could be submitted to the queen's bench division. There the conviction was quashed. Kelly, C. B., after referring to Rex v. Pritchard, 7 Car. & P. 305, said:

"Further, I believe it to have been the law from the earliest times that if it be found, at the trial of a prisoner, that he cannot understand the proceedings, the judge ought to discharge the jury and put an end to the trial, or order a verdict of not guilty. The jury here have found the prisoner incapable of understanding, and it needs no argument to show that under such circumstances he ought not to be convicted."

Lush, J., said:

"I am of the same opinion. If it appear at any time during the trial that the prisoner is of nonsane mind, the proper course is to stop the trial, and direct him to be detained during the queen's pleasure."

For even stronger reasons, if it appear after arraignment, and before trial, that the prisoner is probably not capable of making a rational defense, the proceedings should stop until the sanity of the prisoner is determined or restored. 2 Bish. Cr. Proc. § 666. Such an issue, when presented, goes to the fundamental right of the court to try the main issue, "Not guilty." If present insanity does not appear until the trial has begun, the court may submit the objection to the jury along with the principal issue, requiring a special verdict as to the competency of the defendant to understand the proceeding and intelligently defend himself. But, if the jury find insanity to exist, a verdict upon the issue of not guilty should be quashed. Reg. v. Berry, 1 Q. B. Div. 447; 2 Bish. Cr. Proc. § 666. It is not "due process of law" to subject an insane person to trial upon an indictment involving liberty or life. If the time when such an issue is presented be not vital, for a still stronger reason the mode in which the objection is urged is still less of the substance of the matter. In 1 Hawk. P. C. p. 3, in the notes, it is said:

"Every person of the age of discretion is presumed of sane memory, until the contrary appears, which may be, either by the inspection of the court, by evidence given to the jury who are charged to try the indictment, or, being a collateral issue, the fact may be pleaded and replied to ore tenus, and a venire awarded, returnable instanter, in the nature of an inquest of office. And this method, in cases of importance, doubt, or difficulty, the court will, in prudence and discretion, adopt."

In 2 Bish. Cr. Proc. § 666, it is stated that:

"An insane man cannot even plead to an indictment. Therefore, if, at the arraignment, counsel have reason to suppose their client too insane to take his trial, they should then make the objection, which, it is believed, can be adequately done orally to the court. Or the objection may proceed from a third person on affidavit, or the court may take it on its own observations."

Here the matter was purely collateral, and the objection might well be taken in the form of a sworn application and motion for a continuance upon that ground. This sworn petition of counsel stated, among other things, that the accused was a "confirmed epileptic," and that he had suffered a severe attack of epilepsy since the last continuance. As to the effect of this disease, it was stated:

"That in the preparation of this cause for trial the impairment of the memory of the defendant has been such as to seriously interfere with its preparation; that he has been unable, by reason of said impairment of memory, to furnish counsel with any recollection of many of the vital transactions covered by said indictment which ought to be personally within his knowledge; that this impairment of memory is such that, in the opinion of counsel, from personal contact with him, and examination of the offenses charged in said indictment, he is unable to properly answer said charges; and that the impairment of said memory has been manifest from day to day in the preparation of said cause for trial, in the failure of the defendant to remember transactions from day to day, and such impairment of memory and mental and physical condition warrant counsel, in their judgment, in making this application to the court for the continuance of the cause."

To add to the prima facie case, the affidavits of three physicians were presented, all of whom state that the plaintiff in error is a confirmed epileptic, and that the effect of the disease is to weaken the mind and memory. Dr. Charles Kearns averred that:

"As a result of his numerous attacks of epilepsy, his memory and judgment have become permanently impaired; that his memory is not reliable as to ordinary occurrences of the past; and that, in the judgment of this affiant, he is not in a condition to testify in behalf of himself as to business and other transactions in which he has been engaged."

In further support of the application for a continuance, the petition invoked an investigation, and expressed the desire of counsel—

"To submit the mental and physical condition of the defendant to this court for such examination by competent physicians and otherwise as the court may deem best to make, in order to determine whether the defendant should be subjected to a trial of this cause at this term."

The prima facie showing made by the affidavit of counsel and physicians was that the defendant's mind and memory, as a consequence of epileptic attacks, had become so impaired as that he was unable to advise his counsel as to his defense, or recall transactions which ought to have been within his knowledge, and could not "remember transactions from day to day," and that he was unable, in consequence of his impaired mind and memory, to testify for himself. This prima facie showing was made by persons of weight and respectability, and upon that showing the court was asked to make such examination and inquiry as would further tend to throw light upon the question of the fitness of the defendant to be put on his trial at that term of the court.

The bill of exceptions fails to show that any trial by jury was demanded. As before observed, there is no congressional legislation, such as exists in many, if not all, of the states, regulating the mode of trial of such an issue when presented either as a bar to arraignment, trial, judgment, or execution. The disposition of an accused person found to be insane by the court in which he is indicted is provided for by section 4851, Rev. St., which is as follows:

"If any person, charged with a crime, be found in any court, before which he is charged, to be an insane person, such court shall certify the same to the secretary of the interior, who may order such person to be confined in the hospital for the insane."

And section 4855 provides for the return of one who has been insane, when recovered, for trial.

In 1 Hale, P. C. 35, it is said, touching the manner of proceeding when present insanity is objected:

"But because there may be great fraud in this matter, yet, if the crime be notorious, as treason or murder, the judge, before such respite of trial or judgment, may do well to impanel a jury to inquire ex officio touching such insanity, and whether it be real or counterfeit."

In Frith's Case, 22 How. St. Tr. 307, the court, upon the objection being urged when Frith was about to be arraigned, directed a special jury to be impaneled to try the question of the fitness of the accused to be tried. The same practice was followed in Rex v. Pritchard and Rex v. Dyson, 7 Car. & P. 303–305. But the defendant had no absolute right to a trial by jury of such a preliminary question. The most that can be inferred from the common-law authorities is that the judge may, if he have doubts, call to his assistance the aid of a jury, and submit the matter to them, and that this has been the usual practice. The mode of trial is one which addresses itself to the sound discretion of the court when the objection is made after verdict and sentence. Bonds v. State, Mart. & Y. 143; Nobles v. Georgia, 168 U. S. 398–409, 18 Sup. Ct. 87. We see no reason or authority for a different rule when the objection is made in bar of a trial. In 2 Bish. Cr. Proc. § 666, it is said:

"This question of present insanity is properly, and in practice is generally, submitted to a jury, which may be one of the regular juries attending on the court, or one specially impaneled for the purpose. But this course is not imperative. The court has the discretion, on its own inspection of the prisoner's mental condition, and without the aid of a jury's finding, to decline the trial on the main issue, or direct the question to be tried with the plea of not guilty."

The American authorities support this view. Webber v. Com., 119 Pa. St. 223, 13 Atl. 427; Crocker v. State, 60 Wis. 553, 19 N. W. 435; Freeman v. People, 4 Denio, 9; Jones v. State, 13 Ala. 153; People v. McElvaine, 125 N. Y. 596, 26 N. E. 929; State v. Arnold, 12 Iowa, 479–483; State v. Reed, 41 La. Ann. 581, 7 South. 132. The issue to be tried, when the objection is urged as a bar to a trial, is whether the accused can make a rational defense. 2 Bish. Cr. Proc. § 666; Guagando v. State, 41 Tex. 627; Rex v. Frith, 22 How. St. Tr. 307; Reg. v. Berry, 1 Q. B. Div. 447–450; Rex v. Pritchard, 7 Car. & P. 303.

Having the right to exercise its discretion as to the mode in which

the court should investigate the mental capacity of the accused to understand the proceedings against him, and rationally advise with his counsel as to his defense, we are confronted with the question as to whether the court in any way investigated and decided the issue thus tendered by the counsel for the accused. Undoubtedly the court was bound to entertain the objection and dispose of it in some way. State v. Reed, 41 La. Ann. 581, 7 South. 132. It is suggested that the court did so by personal inspection, and in that way satisfied itself of the competency of the accused to rationally conduct his defense. Unless a basis for the confinement of the accused under section 4851, Rev. St., is sought, it may be conceded that it was competent, where the objection is urged only in bar of a present trial, for the court to determine such an objection by inspection and other private investigation, as we are asked to here infer was had. Such a practice finds some sanction under statutes which make it the duty of the court to submit the issue of present insanity to a jury or to a commission when a defendant under indictment "appears to be, at any time before or after conviction, insane," etc., as is provided by section 658, Code Cr. Proc. N. Y., or under the Iowa statute prescribing trial by jury of such an issue "when a reasonable doubt arises," etc. In People v. McElvaine, 125 N. Y. 596, 26 N. E. 929, counsel for McElvaine, after pleading "Not guilty," tendered an oral plea to the effect that the prisoner was insane, and not a fit subject for trial, and requested the court to appoint a commission under the statute to examine and report on the issue. This was denied by the court upon the ground that there was nothing in the case "from which it appeared that the defendant was then insane." McElvaine was put on his trial and convicted. One of the defenses was insanity at the time of the commission of the offense. The New York court of appeals held there was no error in denying the appointment of a statutory commission, as the statute vested in the judge "a discretion to appoint a commission, or not, as in the exercise of his judgment he may deem it proper or necessary to do so." "It is," said the court, "only when the necessity is sufficiently made to appear to the court in which the indictment is pending, that it is bound to order an examination; but it would be the plain duty of a court, when the subject is brought to its attention by responsible parties, to itself make a sufficient inspection and examination to determine whether the application is made in good faith and upon plausible grounds, and the apparent facts thus discovered are made the condition of the right of the court to institute a statutory inquisition. Such an examination, we infer, the court made in this case." The grounds upon which this inference was drawn were found, not only in the terms of the order denying the application, but upon certain other indubitable evidence appearing on the record. Thus the court proceeds:

"It had previously tried the defendant for the same crime, and had heard the evidence adduced by the defendant to support the plea of insanity. It was familiar with the appearance and conduct of the prisoner during the period of that trial, and had sufficient grounds before it to judge as to the probability of his present sanity. It thus had the prisoner before it, and witnessed his actions and manner, and had access to the information acquired by the officers of the court through their daily contact and communication with the defend-

ant during the time of the imprisonment; and it is hardly possible that the defendant could have manifested symptoms of his insanity which would not have been discovered by, or be communicated, to the court. *There was no pretense that there had been any change in his mental condition since the previous trial, and no proof of any insanity whatever was given to support the demand for an inquisition.*" (The italics are ours.)

To the same effect is the case of State v. Arnold, 12 Iowa, 479.

The case of Webber v. Com., 119 Pa. St. 223, 13 Atl. 427, has been much relied upon by counsel for the government as sustaining their contention that this court should infer, on this record, that the trial court disposed of the issue of present insanity by inspection and on information derived from other sources satisfactory to itself. In Webber's Case, his counsel filed what the report describes as "a formal suggestion" of the present insanity of the defendant, and asked that a jury be impaneled to try whether such fact be true or not, so that the court might take action under a statute of the state providing for the confinement of insane persons under indictment. This suggestion was objected to by the counsel for the state, and defendant offered to support same by affidavits and witnesses. The court declined to hear the evidence, denied the motion, and put the prisoner on his trial; one of his defenses being insanity at the time of the commission of the offense. But here the analogy between that cause and the one before us ends. It appeared on the record that the trial judge did hear, consider, and determine the issue, though he declined to hear the evidence offered in support thereof, and denied a special jury to hear the question. The trial judge inserted in the record his reasons for his action; saying, among other things, that:

"Nearly two hours was consumed in the argument and consideration of the motion, during which time I had the opportunity of observing the appearance and conduct of the prisoner, and the attention he gave to the proceedings. I had also the benefit of the information of the physician of the prison and others to assist me in coming to that sound judgment which it was my duty to exercise. Giving the matter the due consideration to which it was entitled, I came to the conclusion that the prisoner knew where he was, what he was here for, and what was being done."

In addition to this trial by inspection and otherwise, the judge added that:

"In order to protect the prisoner from any evil consequences in case my judgment should turn out to be erroneous. I told the jury, with emphasis, that, if they thought the prisoner is a lunatic at this time, they should add that finding to their verdict, in case they should convict him; and I went further in favor of the prisoner, and told the jury that they might give him the benefit of any doubt on that subject, although the strict rule of law is otherwise."

The supreme court of Pennsylvania, upon a consideration of the whole facts and law, held that the right of the accused to a preliminary trial by jury of the question of present insanity, in bar of a trial upon the merits of an indictment, was not an absolute one. As to the practice, the court said:

"The question principally discussed in this case is a novel one. It does not appear to have ever been determined or even presented to this court before. Briefly stated, it is this: Whether a defendant in a criminal case, who alleges his insanity at the time of arraignment, is entitled, as a matter of legal right, to have a separate, independent, and preliminary trial of that question by a

jury specially impaneled for the purpose. It is certainly the fact that the sixty-sixth and sixty-seventh sections of our Criminal Code of 1860 are substantially—almost literally—taken from the English statute of 39 & 40 Geo. III. c. 94, and that under that statute the English criminal courts do, not infrequently, award preliminary issues to determine the sanity of prisoners by the verdict of a jury. The same is true of the practice in several of our sister states. We have examined with much care the various authorities cited in the very able and exhaustive argument of the learned counsel for the plaintiff in error, and we find that in all of them the inquest was directed generally by the court of its own motion, sometimes at the instance of the attorney general, but always in cases where the appearance and the actions or the prisoner were such as to manifestly indicate a condition of insanity, either real or simulated. In point of fact, the purpose of the inquiry was to inform the conscience of the court as to the prisoner's real condition at the time of the trial, but before the trial proceeded. There was an obvious propriety in directing an inquiry by the verdict of a jury in all such cases, because the fact itself required determination before any further proceedings were had, if there was probable ground for belief that a condition of insanity existed. If, upon an examination of the prisoner, there was no apparent reason to suppose him insane, but, on the contrary, he seemed quite capable of pleading to the indictment, there was no necessity for a preliminary trial, because every right to set up insanity, either when the offense is committed, or at the time of the trial, still remained, and could be thoroughly tried by the jury who were to try the indictment. The existence of the doubt as to the prisoner's present insanity is a matter which, by the very necessity of the case, could only be determined by the court itself. Up to the time of pleading, there is no other tribunal which has the prisoner in charge, and there is no other which can say whether there is a doubt upon that subject. It is one of the functions which must be intrusted to the court, and it is not to be presumed that it will in any case be abused. If it should be, there is still the remedy available in all cases where abuse of discretion has taken place."

Having had the question tried and considered by the trial judge in the manner stated, and then by the jury along with the principal issue, the supreme court held that there had been no abuse of the discretion of the court in refusing a preliminary inquiry, and that there was no reason for reversing the cause for such a preliminary trial. The contrast between the proceedings in that case and those in the court below is quite striking. The fact that the trial court gave consideration to the issue of present insanity, and determined it by personal inspection, aided by the counsel, opinion, and advice of the jail physician "and others," and that it also submitted to the jury the question of the present sanity of the accused, appeared affirmatively upon the record in the Webber appeal. The record before us is silent as to how the court satisfied itself of the sanity of the accused, in the face of the showing made by the petition and accompanying affidavits, or whether the objection was entertained and decided in any way. The issue presented by the petition and motion thereon for a continuance involved the substantial rights of the accused. If the petition truthfully described the then condition of the mind and memory of the plaintiff in error, grave doubt must arise as to whether he was a fit subject for trial.

Assuming, as we shall, that no duty rested upon the court to impanel a jury to inquire whether the accused was in truth incapable of understanding the proceedings, and intelligently advising with his counsel as to his defense, and that it was optional with the court to call a jury, or to resort to any other special mode of aiding his

judgment, it was nevertheless his duty to consider and determine the matter judicially; and the record should show affirmatively that upon this issue there has been the exercise of judicial judgment and discretion. Whatever the court's judicial discretion as to the mode of hearing and deciding, we entertain no doubt but that it was error to refuse altogether to entertain the objection; and this, we think, is the only justifiable inference which can legitimately be drawn from the order denying a continuance, the record being otherwise silent as to the disposition of this question. When a matter rests in the absolute discretion of the court, as the granting or refusing of a new trial, and the court excludes, improperly, evidence admissible upon the question, as in Mattox v. U. S., 146 U. S. 140, 13 Sup. Ct. 50, or refuses to exercise its discretion, upon the erroneous opinion that it has no power to grant a new trial, as in Felton v. Spiro, 47 U. S. App. 402-411, 24 C. C. A. 321, 78 Fed. 576, the action is reviewable. This principle is applicable here. However wide the discretion of a trial court in respect to the mode of disposing of such an issue as that now involved, if the court has refused altogether to consider, hear, and determine in any way an issue of present insanity, when properly presented as a bar to a trial, there has been no exercise of discretion, and the action of the court is subject to review.

We are the more content to regard the action of the court erroneous, for the reason that upon the issue of not guilty much evidence was heard as to the mental state of the plaintiff in error at the time of the commission of the offense charged in the indictment. The dates of such offenses were between the latter part of 1894 and latter part of 1895. The trial occurred in March, 1898. As throwing light upon his condition at those dates, evidence was received as to his condition down to time of trial, but the jury were instructed that the material fact was his mental state at the dates of the offenses, and that evidence as to his mind and memory after those dates was important only as throwing a backward light upon his condition when he committed the offenses charged. Epilepsy is a progressive disease, and its effect upon the mind and memory is progressive. There was evidence strongly tending to show that the memory and mind of accused shortly before and during the trial were impaired, and rendering it doubtful whether the accused was capable of appreciating his situation, and of intelligently advising his counsel as to his defense, if any he had. This evidence indicated that the disease had progressed, and with it the impairment of mind and memory. We think the learned trial judge should have adopted some method of satisfying himself that the accused was able to rationally defend himself, before putting him on trial under the plea of not guilty. For this error we are constrained to reverse the case, with directions that a new trial be awarded, and that before such trial some mode, in the discretion of the court, be adopted for a thorough investigation of the sanity of the accused.

Inasmuch as we must logically regard the trial upon the merits as unauthorized, we refrain from passing upon any of the errors assigned which relate to the trial. If the accused was insane, he

should not be prejudiced by any rulings upon questions arising upon such a trial, by either the action of the trial court, or of this as a court of review. Reverse and remand for further proceedings.