## LEE v. UNITED STATES.
### No. 8170.

Circuit Court of Appeals, Fifth Circuit.
June 30, 1937.

Rehearing Denied Aug. 3, 1937.

See, also, In re·Lee (C.C.A.) 87 F.(2d) 142.

James Hartnett, E. Sydney Feinstein, and Ray E. Lane, all of Chicago, Ill., and James R. Venable, of Atlanta, Ga., for appellant.

Henry A. Schweinhaut, Sp. Asst. to Atty. Gen., and Lawrence S. Camp, U. S. Atty., and M. Neil Andrews, Asst. U. S. Atty., both of Atlanta, Ga., for the United States.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Robert Lee, was convicted on thirty-five counts of an indictment charging him, B. R. Bradley, and Wm. A. Smith with violations of the postal laws of the United States, by the mailing of letters in furtherance of a scheme to defraud; and on one count charging the same defendants with conspiracy to commit the same offense. He was sentenced to serve three years' imprisonment on each of the counts charging substantive offenses and two years on the conspiracy count, the sentences to be served concurrently.

There are twenty-eight assignments of error. Error is assigned to the overruling of a motion to quash the indictment, based

on the grounds that the indictment does not charge appellant with a crime and is duplicitous; and that evidence obtained by an illegal search and seizure was submitted to the grand jury.

██ The indictment is lengthy, occupying 130 pages of the record. However, it will be sufficient to briefly state its salient points. In substance, the first count alleges that Robert Lee, B. R. Bradley, and Wm. A. Smith devised a scheme to defraud twenty-three named persons and the general public, by obtaining money and property by false and fraudulent pretense, representations, and promises, with intent to convert the same to their own use. The scheme is set out with great particularity. The count alleges false representations, by means of letters, circulars and newspaper advertisements, to the effect that Bradley was an experienced and successful operator on the New York Stock Exchange who had never failed to secure dividends for investors intrusting their money to him. It alleges the formation of seven corporations, through which operations were ostensibly to be conducted, and that Bradley, by means of contracts with said corporations, in fact conducted the business; that large losses were made but investors were paid dividends not earned, out of money invested by new subscribers, for the purpose of inducing named persons and others to continue business with defendants and make further investments. Representations, appropriately alleged to be false and fraudulent, are set out with great particularity. The count further alleges that fraudulent representations were to be sent through the mail and "by means and instruments of communication in interstate commerce." The first count alleges that defendants knowingly placed and caused to be placed a letter in the mail at Atlanta, Ga., within the jurisdiction of the court, addressed to John A. Thurston, Thomaston, Ga. The letter, set out in full is a lengthy document on the letterhead of American Bond & Share Corporation, one of the corporations alleged to have been made use of in the scheme. It was dated at Atlanta, Ga., July 10, 1934, and was signed "American Bond & Share Corporation, Robert Lee." Without further stating it, it is sufficient to say it was plainly intended to induce the person to whom addressed to entrust his money to defendants for investment and was in furtherance of the scheme. The other counts charging substantive offenses allege the mailing of various other letters and refer to the first count for a description of the scheme. The conspiracy count is sufficient in form.

There is no doubt the indictment charges all the elements of a crime in violation of the postal laws (18 U.S.C.A. § 338) and is sufficient. Appellant contends that by alleging that false representations were to be sent by means of communication in interstate commerce, the indictment also charges a crime under the provisions of the Securities Act of 1933 (15 U.S.C. A. § 77q) and is duplicitous. The allegation complained of may be regarded as surplusage but, giving it full effect, it is immaterial. The gist of the offense charged is the mailing of a letter in furtherance of a fraudulent scheme. The means used in concocting the scheme and communicating with the intended victim, up to the mailing of the letter, are unimportant. Cf. U. S. v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836.

██ On the other ground urged for quashing the indictment, the following appears: The motion to quash is lengthy and in great detail alleges acts of the agents of the Securities Commission in the seizure of books and papers of some of the corporations named in the indictment and the invasion of appellant's office and the seizure of documents of said corporations in his custody. However, neither by allegation nor proof is it shown with sufficient certainty that any evidence thus obtained was actually before the grand jury. It was not error to overrule the motion to quash.

██ A number of assignments run to the refusal of the court to direct a verdict of acquittal. The evidence shown by the bill of exceptions is voluminous but it is unnecessary to review it extensively. One good count supported by evidence is sufficient to sustain the judgment. Evans v. U. S., 153 U.S. 584, 14 S.Ct. 934, 38 L. Ed. 830.

██ The theory of appellant is that he was acting simply as an attorney at law, giving legal advice and attending to legal matters in court. There was ample evidence to sustain the allegations of fraud and to prove the mailing of various letters; and that though Bradley was the moving spirit of the fraudulent scheme Lee was

closely connected with him, actively participating in the management of the business as a principal and not merely acting as a lawyer. There was undisputed evidence to show that the letter made the basis of the first count was signed by Lee, was mailed at Atlanta, and was received through the mail by Thurston to whom it was addressed.

■ Error is alleged to the refusal of the court to suspend the trial and order a mistrial, and to order the United States attorney to file a bill of particulars. These were matters within the sound discretion of the trial judge. U. S. v. Hirsch (C.C.A.) 74 F.(2d) 215, cert. denied 295 U.S. 739, 55 S.Ct. 653, 79 L.Ed. 1686; Wong Tai v. U. S., 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545. We find no abuse of discretion in this respect.

■ A number of errors are assigned in general terms to the admission of evidence and remarks of the judge considered prejudicial. The assignments fail to set out the substance of the evidence and the remarks of the judge objected to, in violation of our rule 11. We are unable to determine from the bill of exceptions whether these assignments are well taken and cannot consider them.

After verdict and the overruling of a motion for a new trial, appellant, through his counsel, verbally moved in arrest of judgment, upon the following ground, among others: That it was made to appear from an army record introduced by the Government that appellant was non compos mentis and not possessed of the necessary criminal mind to render him responsible for anything wrong charged against him in the indictment. Error is assigned to the overruling of this motion. In this connection the following appears from the record.

■ In the course of the trial, for the purpose of proving that appellant had previously been guilty of a similar offense, to show intent, the United States offered the record of proceedings before a court-martial, charging Lee with violation of the postal statute, while he was a private in the United States Army, in July, 1918. Part of the record offered related to a mental examination of Lee in September, 1918. From this it appears that a board of three medical officers found that Lee did not have sufficient mental capacity to justify his being brought to trial and at the time of the alleged offense did not have the necessary criminal mind to commit the offense charged; that he was suffering with dementia praecox of the paranoid type, which had existed prior to his induction into the service; that dementia praecox is an incurable disease and grows progressively worse. The board recommended that Lee be discharged from the service and turned over to the civil authorities as he was a menace to public safety. Defendant objected to the introduction of this record and after colloquy between court, appellant and counsel, which was not disclosed to the jury, the objection was sustained.

It is apparent from the record offered that the court-martial proceedings did not result in a judgment either of guilt or acquittal and the issue of insanity was not decided. The certificate of the medical board had no more probative value than would have had any other unsworn written opinion as to the mental capacity of appellant. The army record was not admissible either to prove intent or insanity and was properly excluded by the court.

■ "Dementia praecox," as its derivation indicates, is precocious insanity, usually beginning at puberty. Century Dictionary, "Dementia." "Paranoia" is defined in medical jurisprudence as a form of insanity which is characterized by systematized delusions or by the tendency to form such delusions. These are usually delusions of persecution or grandeur. Wharton & Stillé's Med.Jur. (3d Ed.) c. 48. Every one charged with crime is presumed to be sane. To be available as a defense the insanity of the accused must be such as to deprive him of mental capacity to distinguish between right and wrong. Necessarily this depends largely upon the particular crime charged. For instance, one laboring under a delusion of persecution might commit a murder believing it to be right, yet be scrupulously honest and able to distinguish between right and wrong in financial transactions. This applies with equal force to a delusion of grandeur.

■ While an accused is presumed to be sane, the presumption is rebuttable and only slight evidence to the contrary, admitted in the course of the trial, is sufficient to raise the issue, to be submitted to the jury, with all the other evidence, with-

out shifting the burden of proof. Davis v. U. S., 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499. But where the question of insanity is raised for the first time after verdict, as in this case, a different rule applies. There is no applicable statute of the United States and federal courts apply the common-law rule. At common law a suggestion of insanity after verdict did not give an absolute right of the defendant to have the issue tried to a jury but addressed itself to the discretion of the judge. Of course, the judge might impanel a jury to try the issue, but also he could, upon inspection of the prisoner and consideration of the case, in the exercise of sound discretion, deny the plea of insanity. Nobles v. Ga., 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515; Youtsey v. U. S. (C.C.A.) 97 F. 937; Whitney v. Zerbst (C.C.A.) 62 F.(2d) 970.

■ The trial before the jury lasted some eighteen days. Appellant, although assisted by counsel, had conducted his own defense very skillfully, objecting in proper form to the admission of evidence and raising every possible technical defense both at the trial and by preliminary pleas and motions. He was an attorney admitted to practice in federal and state courts and maintained an office for the transaction of legal business in Atlanta. There was evidence tending to show that he knew the difference between right and wrong, but nevertheless persisted in engaging in the fraudulent transactions, some of which he initiated and carried through by his ability as a lawyer. The court-martial record informally brought to the attention of the court was not enough to require the judgment to be arrested. We find no abuse of discretion in overruling the motion in arrest of judgment.

Other assignments are without merit and require no discussion.

■ After the appeal was filed appellant presented a motion in this court for a new trial, which, although inartificially drawn, we may treat as a motion to remand the case to the District Court for the purpose of permitting the court to consider the motion under the provision of rule 2 of the Criminal Appeals Rules. (28 U.S.C.A. following section 723a.) The motion attacks the competency of appellant's associate counsel and again seeks to raise the issue of insanity. It is supported by a lengthy affidavit of Eldon Haldane, an attorney of Atlanta, which tends to show that in affiant's opinion, appellant was insane but there is nothing to show that this witness was not available on the trial of the case. The motion is also supported by the affidavit of Benjamin R. Bradley, a codefendant, who was a fugitive when appellant was put on trial. This affidavit is also lengthy and diffuse, attempts to review the case, and tends to exculpate appellant. The evidence of Bradley would be merely cumulative and does not fall in the class of newly discovered evidence. We find no merit in the application. Hawkins v. U. S. (C.C.A.) 90 F.(2d) 551, decided June 3, 1937.

Reversible error not appearing, the judgment is affirmed. The motion to remand for consideration of the application for a new trial is denied.

### On Motion for Rehearing.

The application for rehearing in this case is lengthy but raises only one point that requires consideration. It is alleged that the court was illegally organized for the purpose of hearing the appeal because Judge SIBLEY, who sat on the hearing of the appeal, had rendered judgment in the District Court denying an application by Lee for a writ of habeas corpus. It is contended Judge SIBLEY was ineligible under section 120, Jud.Code (28 U.S.C.A. § 216), which provides: "No judge before whom a cause or question may have been tried or heard in a district court, or existing circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals."

Construing the statute, which alone governs, in Rexford v. Brunswick, 228 U.S. 339, 33 S.Ct. 515, 517, 57 L.Ed. 864, the Supreme Court said: "The terms of the statute, before quoted, are both direct and comprehensive. Its manifest purpose is to require that the circuit court of appeals be composed in every hearing of judges none of whom will be in the attitude of passing upon the propriety, scope, or effect of any ruling of his own made in the progress of the cause in the court of first instance."

From an unpublished opinion by Judge SIBLEY in the habeas corpus case it appears that the grounds on which habeas corpus was sought were that the trial was a nullity because defendant was insane at

the time of the trial and that he was not present in the courtroom at the time that some of the testimony was introduced. Judge SIBLEY discussed these contentions in his opinion, but the decision was put mainly upon the ground that a motion for new trial was pending in the case, the judgment had not become final and would be subject to appeal.

The appeal in this case was from the judgment of conviction. One of the assignments of error pressed was the denial of a motion in arrest of judgment on the ground that appellant was insane. Conceding that Judge SIBLEY passed upon a similar question affecting appellant in the habeas corpus case, that is immaterial. In order to invoke the statute it must be shown that the question decided in the District Court was in the same case and is also presented for decision on appeal. The question considered and decided by Judge SIBLEY in the District Court was that the petitioner was not entitled to be released on habeas corpus and was in a separate and distinct case. That question was not presented on this appeal at all.

Appellant was represented by counsel on the hearing of this appeal. The case was elaborately argued and a voluminous brief was filed. Objection was not made to Judge SIBLEY'S sitting on the appeal and the impropriety of his having done so is raised for the first time on the motion for rehearing. No doubt, had the slightest suggestion been made at the hearing on the appeal as to the impropriety, or even indelicacy, of Judge SIBLEY'S sitting, he would have stepped aside, although not required to do so. It is too late to raise that question now after the case has finally been decided on appeal. Manifestly it was intended only to delay the ultimate decision of the case.

We consider that no question presented on the appeal was tried or heard by Judge SIBLEY in the District Court, within the letter or intent of the statute, and he was not ineligible to sit on the hearing of the appeal in this case. Delaney v. U. S., 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462; Tinkoff v. U. S. (C.C.A.) 86 F.(2d) 868–883.

The petition for rehearing is denied.

SIBLEY, Circuit Judge, took no part in the decision on the motion for rehearing.