## UNITED STATES v. BOYLEN.

District Court, D. Oregon.
April 25, 1941.

J. Mason Dillard and C. Laird McKenna, Jr., Asst. U. S. Attys., both of Portland, Or., for the United States.

Robt. F. Maguire, Hugh L. Biggs, and Donald K. Grant (of Maguire, Shields & Morrison), all of Portland, Or., for defendant.

McCOLLOCH, District Judge.

Yesterday afternoon was the first opportunity I had to consider the authorities which were submitted the other day, and this being a criminal matter, I am anxious to move it along as fast as can be consistently and judicially done.

Now I have some views that I have developed after reading and considering the authorities.

The leading federal cases are three: United States v. Chisolm, C.C., 149 F. 284, decided in 1906, which is a charge to a jury by the trial judge in a preliminary inquiry as to the then mental condition of the defendant in the case (what is said in that charge has often been quoted and followed), and Youtsey v. United States, 6 Cir., 97 F. 937, decided in 1899. An exhaustive opinion was rendered in the latter case by Judge Lurton, who later became a member of the Supreme Court. That case was a review of the manner in which a trial judge had dealt with representations as to the then insanity of the defendant.

The latest federal case I have been able to find or that has been cited is United States v. Harriman, 4 F.Supp. 186, decided in 1933, in the District Court of the Southern District of New York. I notice there were eminent counsel in the case: Mr. William J. Donovan for the defendant and Mr. Tuttle for another defendant. District Judge Caffey, in his statement, which apparently was oral, relates that he had taken advice from all of his colleagues on the District Bench as to all prior experiences in that court in dealing with a situation of this kind.

State v. Henke, 196 Wash. 185, 82 P.2d 544, decided in the Supreme Court of Wash-

ington in 1938, is so far as I know the last reported discussion of this subject.

██ Now in those four opinions I believe is to be found the rule for the present situation. I read them to mean, first, that it is my duty, the duty of any trial judge, when a representation of the sort that has been made here is made, to defer all further proceedings and immediately proceed to an inquiry as to the subject matter of the representation; and, secondly, that a variety of courses are open, the choice of them being in the discretion of the trial judge. Those choices are best set out in the Harriman case. One of the choices is for the trial judge to conduct a hearing in the form of a trial, either with or without a jury; if with a jury the verdict of the jury is to a certain extent advisory.

Mr. Dillard: May I inquire, your Honor, your view as to the question, the problem before the trial judge at that stage?

██ ██ The Court: That is going to be harder to state. You will be interested in the form of the verdict that was submitted in the Chisolm case. You will be interested I think in this last expression on the subject in the Washington Supreme Court [196 Wash. 185, 82 P.2d 548]:

"This court has never been called upon to determine the test of the sanity or insanity of a defendant during the trial or at the time of judgment.

"Since there is no statute relating to the test of sanity or insanity of the defendant during the course of the trial, we must revert to the common law test.

"The general rule at common law is that the test of a defendant's present sanity during the trial and at the time of sentence is not the right and wrong test, but the test is whether one is capable of properly appreciating his peril and of rationally assisting in his own defense. If he is not, then the defendant is of such unsound mind that he may not be tried, sentenced, or punished."

Now, quoting from Bishop, the opinion continues:

" 'The capacity to be tried,—which must exist at the time of the trial, differs from that for crime required when the wrongful act was done. If an indicted person is not sane, the court cannot go on with the case; or if he becomes insane after the trial commences, he can neither be sentenced, nor, if sentenced, punished, while his insanity continues.' "

You will find in those cases that a rule has been developing which gives us a pretty good criterion of what our task is here, and I am not going to try to state it any further now than this excerpt from the latest opinion that I have read, and leaving the suggestion that I will be guided at the hearing to be held by the rule formulated by the composite of those four opinions, which I think are the leading as well as the latest authorities on the subject in this country.

In other words, gentlemen, we will proceed to a hearing on the showing that has been made, leaving the formulation of the exact question to the developments at the hearing, all of us being guided by the expressions in these opinions.

Now there are certain practical problems as to what I, or any other trial judge, in this kind of situation can do or should do, depending on the alternative courses that may be followed. There are questions of expense. We are not aided by any federal statute on the subject. There are questions of too active or positive direction by the Court of the form which the proceeding shall take and who shall be called. We must look also, I feel, ahead to later stages of the case. I must, any judge in this situation should, keep in mind the later stages of the case, so that, by nothing I may do at this earlier stage of the case will my position as a trial judge, should the case go ahead on the merits, be impaired or any difficulty made either for myself or for counsel.

██ So, after thinking over the many alternatives and possibilities of the situation, I feel that at an early date we should have a hearing without a jury, unless one is asked for—if one is asked for I will consider the request—the defendant assuming the usual burden of one who is asserting an affirmative proposition by opening the case, and I will hear testimony in open court in the usual way, subject to cross examination, both expert and nonexpert, by that I mean both medical and lay witnesses, as they may be offered.

A question arises whether the defendant has the constitutional immunity usual to criminal trials on merits, from being called to the stand. I am not injecting this question into the case just abstractly, but that has a certain practical bearing on the issue raised, to my mind—whether or not the defendant takes the stand, if he does not have such constitutional immunity. As to whether defendant may decline to testify in his own behalf I have no opinion now. I know

of no authority on it, and if such constitutional immunity does not exist in this kind of a proceeding, if a defendant does not take the stand, as to what deductions the trier might draw from that I go no further than just to state that a practical question does seem to arise.

The form of the verdict in the Chisolm case [149 F. 290], which was submitted by the court, was: "We the jury, find the prisoner at the bar is, or is not (according to the view you take of the evidence), of sufficiently sane mind and in such possession of his mental faculties as make it proper to hold him on trial."

The question in this kind of a proceeding is stated in the Harriman case [4 F.Supp. 188] to be, quoting from the Chisolm case: "The precise question * * * is to determine whether at this time the prisoner is in such possession of his mental faculties as enables him to rightly comprehend his condition with reference to the proceedings against him, and to rationally aid in the conduct of his defense."

Now continuing from the Harriman opinion: "Again, it was said that 'the inquiry * * * is this: Is the mind of the defendant at the bar * * * so far from normal and so impaired by disease as to make it improper and unjust to keep him on trial for the offense for which he has been arraigned?'"

The Youtsey case, where the opinion was written by Judge Lurton, is closer to this case, it seems to me, than any of the others. There the defendant was an epileptic and two things were claimed: That his epilepsy was so serious that he could not go through the trial without suffering an attack, which turned out to be the case, and forced a postponement of the trial and its completion at a later date; secondly, it was claimed that his memory, which is what brings it close to this case, was so far impaired by the epilepsy that he could not assist his counsel in preparing his case, nor contribute anything helpful toward it himself. Judge Lurton, 97 F. at page 941 of the opinion— and I go very strongly on this opinion because of the eminence of the Judge and because of the apparent thorough research which the opinion reflects—says: "For even stronger reasons, if it appear after arraignment, and before trial, that the prisoner is probably not capable of making a rational defense, the proceedings should stop until the sanity of the prisoner is determined or restored."

He has there quoted from Bishop on Criminal Procedure. I call particular attention to the phrase "not capable of making a rational defense."

And before I close, I just want to say this further: The word "memory" apparently has acquired a more restricted use in modern times than as used in Blackstone and other ancient authorities. "Memory" in those authorities appeared to be synonymous with "mind", whereas we more often use "memory" nowadays—and I note that our modern dictionaries so use it—in a more restricted sense of recollection of past events rather than the general state of one's mental powers; and so I think that in reading the earlier authorities that broader understanding of the word must be kept in mind.

Now to sum up, gentlemen, we will have this hearing at an early date, guided by those authorities. We will not try to state the question that we are trying with any greater particularity than the statement made by defendant's counsel in their petition. We will try the issues as presented by the petition, and if the testimony or other developments at the hearing call for a broadening or restatement of the issue we will restate it at that time.

Mr. Grant: Your Honor has previously mentioned a commission of doctors, and you in this statement here mentioned the matter of expense. The defendant is willing to bear one-half of the expense of that commission.

The Court: When I talked to you about a commission the other day, that had to be considered as provisional, because I had had no chance at that time to reflect on the subject or to go into the authorities, nor to take counsel with my colleague, all of which I have done since. What I want now is a trial in open court in the usual way, with witnesses put on, subject to cross examination by the other side, the defendant opening and closing both in proof and in argument; and the only suggestion that I have to make about expert witnesses would be as to the number of them. I should think that that number, if it can be done without prejudice to either side, should be reasonably limited, say to three.

I have heard in the time I have been trying cases here a number of medical men on the witness stand; probably have heard all of the men in the neurological field. I would particularly welcome the opinions of Dr. D. C. Burkes, who has been employed

727

by the defense, and of Dr. John C. Evans, who is Superintendent of the Oregon State Hospital.