## UNITED STATES ex rel. ADAMS v. RAGEN.

### No. 9659.

United States Court of Appeals
Seventh Circuit.

Feb. 17, 1949.

Rehearing Denied March 10, 1949.

694

Abner F. Bond, of Chicago, Ill., for appellant.

Ivan A. Elliott, Atty. Gen., William C. Wines, Asst. Atty. Gen., and George F. Barrett, Atty. Gen. (James C. Murray and Raymond S. Sarnow, Asst. Attys. Gen., of counsel), for appellee.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner was convicted on October 8, 1935, in the Criminal Court of Cook County, Illinois, on his plea of guilty of murder and was sentenced to the state prison for a term of seventy-five years. The respondent is the warden of the state prison that has the petitioner in custody, pursuant to the judgment entered upon that conviction. After exhausting his remedies in the state courts, the petitioner filed his petition for habeas corpus in the District Court for the Northern District of Illinois. The petition was responded to and the writ issued. After a hearing before the District Court, at which the petitioner was present in person and by counsel, the writ was quashed and the petition denied and dismissed. From the judgment dismissing the petition, the petitioner has appealed.

The points raised here by the petitioner are that he was denied counsel of his own choice and that he was coerced and intimidated into withdrawing his plea of not guilty and entering a plea of guilty. The following facts are undisputed on this record.

On January 24, 1935, a tire store in Chicago was robbed by three men. In the course of the robbery, a policeman, who had been stationed in the store to be on the lookout for a robbery the police had been informed would probably take place, was shot by the robbers and killed. It was not until the following September 3, 1935, that the petitioner and Wroblewski and Goralski were arrested. They confessed to about fifty robberies and to the murder of the policeman. In fact, the petitioner and his confederates went with the police officers voluntarily and re-enacted for them the robbery and the shooting. The robbers were identified by the store manager and by a customer who saw them come into the store. The policeman encountered the robbers, all three of whom were armed, a gun duel ensued, and the policeman was killed. In the record there is a statement made to the court by the state's attorney and undisputed that all three of the robbers fired. In an application to the Governor of Illinois for a commutation of sentence, the petitioner frankly admitted the firing on the police officer but said that he, a robber engaged in the act of robbery, was firing in self-defense. The policeman was in uniform at the time he was killed.

At the September, 1935, term of the Cook County Grand Jury, the petitioner and Wroblewski and Goralski were indicted for the murder of the policeman. On Sep-

tember 10, 1935, they were arraigned before Judge Normoyle, and the petitioner alone pleaded not guilty. Mr. Bachrach, a very able and honorable criminal lawyer who was the public defender, was appointed as counsel for the defendants. The case was continued to September 21, then to September 23, and then to September 24, at which time Attorney Rada filed his appearance for Adams. The case was continued to October 8, 1935. Rada filed his appearance because the petitioner's friend Stream asked him to do so. Rada received no money from Stream, from the petitioner, or from any member of the petitioner's family, whom he did not know. After Rada filed his appearance, he met the petitioner and the petitioner's wife for the first time. He visited the petitioner only once. He talked to him about half an hour but did not discuss any defense the petitioner might have, although Rada had a copy of the indictment. Rada did not consider the petitioner not guilty but intended to plead him not guilty and to go to trial, although he had subpoenaed no witnesses. In fact, there were no witnesses for the petitioner except the petitioner himself. Rada did not expect to acquit the plaintiff, but he did expect to get him the minimum sentence of fourteen years. Why he expected the minimum sentence does not appear unless he expected to get it by persuading the jury to believe the petitioner's story which Rada said the petitioner told him, that he was lying on the floor with a gun in his hand but that he did not shoot. Even this was not true. As we have pointed out, in his petition for commutation of sentence, the petitioner admitted he fired.

On October 8, 1935, the case was called before Judge David. A voice, unidentified, said: "I am here on behalf of Mr. Rada who is ill this morning." The court replied: "I will not accept his continuances. This case has been continued enough to get somebody else. I am telling you I won't do it; the Public Defender was in this case and he is amply able to take care of them." When Goralski was called, he said his lawyer was the public defender, and when Wroblewski was called, a Mr. Zelden appeared for him. When the petitioner Adams was called, he said his

mother and wife had employed Mr. Rada. The court replied: "Your mother just wrote me a letter and says she has no money to be employing a lawyer. Were you originally appointed, Mr. Bachrach?" Mr. Bachrach: "Yes." An unidentified voice said: "Mr. Rada was ready for trial but he was suddenly taken ill." Rada said he had a head and chest cold. At the time the case was called, no showing for a continuance was made by Rada except the two statements of the unidentified voice. The defendant Wroblewski sparred with the court for leave to withdraw his plea of guilty and enter a plea of not guilty if the court would try him without a jury. This the court emphatically refused to do and said that if the defendants did not want to plead guilty, he was going to submit the case to a jury upon a plea of not guilty. The defendant Wroblewski stood on his plea of guilty. Then the court said: "What do you say?" A defendant: "All right." The Court: "What do you say, Mr. Bachrach?" Mr. Bachrach: "All right." The Court: "What do you say?" A defendant: "It is all right, Judge."

The court then explained to the petitioner and his co-defendants that on their plea of guilty the court could sentence them to death, life, or any number of years not less than fourteen. This was repeated to Wroblewski and Goralski separately, and each said he understood it and notwithstanding his full understanding of the penalty that might be imposed, each defendant still stood on his plea of guilty. The court then turned to the petitioner and said: "And Adams, you have heard what I have stated to the other men. Is your view the same?" Adams: "Yes." The Court: "You still wish to withdraw your plea of not guilty and plead guilty to murder, with a full conscience of what the penalty may be?" Adams: "Yes."

The court then heard evidence as to what the case was about and whatever could be shown in extenuation. The court mentioned a pathetic letter from the petitioner's mother. Mr. Bachrach offered nothing in extenuation, although he had shown on cross-examination of a policeman that the petitioner and his co-defendants cooperated fully with the officers after their arrest.

The state's attorney stated that in accordance with his conference with Mr. Bachrach, he would not insist upon the death penalty, and he recommended a sentence of one hundred years. When the petitioner was asked if he had anything to say why sentence should not be passed, he said: "All I have to say is that the Court have leniency on me." The petitioner did not know his mother had written the letter to the court. The court then asked if there was any reason for "more clemency" to the petitioner, to which the state's attorney replied there was not, and the court pronounced sentence of seventy-five years. Judge David is dead, and Mr. Bachrach is mentally incompetent and could not testify.

■ The District Court upon this record found that the petitioner was represented from his arraignment all the way through to his sentence by Mr. Bachrach, the public defender, who was competent and gave the petitioner adequate representation; that the petitioner was not denied the counsel of his choice; that he was not coerced into entering a plea of guilty; and that he intelligently, understandingly, and advisedly, under his own volition, with the advice of competent counsel, entered his plea of guilty. These findings are based upon substantial evidence and are not clearly erroneous. They support the court's judgment. We may not set them aside.

■ This case arose under state jurisdiction. It has been held that the denial of counsel in a state jurisdiction in a non-capital case does not violate the defendant's rights under the Constitution of the United States. Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. The Supreme Court has said that the failure to make an effective appointment of counsel in a capital case in a state jurisdiction may be a denial of due process under the Fourteenth Amendment. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. See also De Meerleer v. People of State of Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584.

■ That a defendant in a state jurisdiction must at all events have counsel is not required by the Federal Constitution, even in a capital case. If a defendant understandingly and voluntarily pleads guilty to murder, even though he had no counsel of his choice or otherwise, the lack of counsel standing alone would not violate due process guaranteed by the Fourteenth Amendment. Carter v. People of State of Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172. Each case stands on its own bottom. A failure to have counsel in one capital case may spell out a failure to provide due process, as in the De Meerleer case, where the defendant, only seventeen years old, was indicted for murder, pleaded guilty, and was sentenced to life imprisonment, all in one day. On the other hand, in Carter v. People of State of Illinois, supra, the defendant was not shown to be immature or handicapped in any way, and his conviction on his plea of guilty to murder entered understandingly, without representation by counsel, was held not to have violated due process.

Chapter 38, Section 730, Ill.Rev.Stat. 1947, provides: "Counsel—Fees for indigent defendant. § 2. Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense." Although it is not shown that the petitioner made oath that he was unable to procure counsel, it nevertheless cannot be disputed on this record that the petitioner had competent counsel at each stage of the case from arraignment to judgment.

■■ Let us go a step further and assume that the petitioner was entitled to the counsel of his choice. See Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The defendant may waive his constitutional right to counsel if he does it understandingly and voluntarily. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357. If he may waive his right to counsel, he may waive his right to counsel of his choice. Under the circumstances revealed in this record, with the able, conscientious public defender representing the plaintiff from the start to the finish; without a word of pro-

test by the petitioner at any time; with the tenuous nature of the so-called employment of Rada and the kind of service he proposed to render as revealed on this record; and with the competent representation given the petitioner by the public defender, we think it plainly apparent that the petitioner intelligently and voluntarily waived his right to the counsel of his choice, if he ever had any such counsel. We think that with the petitioner clearly guilty of murder, which he, an intelligent man of twenty-four years of age clearly understood, he very willingly followed the advice of the public defender, who had conferred with the state's attorney and had obtained from him a commitment to refrain from requesting a death sentence.

We further hold in this case that with competent court-appointed counsel representing the mature, intelligent petitioner from arraignment to judgment, the fact that some other attorney had entered an appearance for the petitioner voluntarily and without employment, and did nothing for the petitioner except fail him on the day of trial, and had made no preparation for trial, the refusal of the trial court to continue the case under the circumstances revealed in the record and compelling the case to go to trial under the counsel and guidance of an able, experienced criminal lawyer, did not violate the due process clause of the Fourteenth Amendment.

There is no substance to the contention of the petitioner that he was intimidated or coerced by the trial court into changing his plea. All the trial court did was to make it unmistakably clear that if any of the defendants wanted to stand on his plea of not guilty, the court was going to submit the case to a jury. A defendant has no constitutional right to be tried by a court, but he does have a constitutional right to be tried by a jury in the State of Illinois.[1] In insisting that the petitioner be accorded his full constitutional right to a jury trial, the court cannot be guilty of coercing or intimidating the petitioner in an unconstitutional sense, or in any sense.

Counsel for the petitioner who so conscientiously and ably represented the petitioner here did so by appointment of this court without fee, and we wish to record our appreciation of the manner in which counsel has met and discharged his responsibility.

The judgment of the District Court is affirmed.

---

[1] Ill.Const.1870, art. II, Sec. 5, Smith-Hurd Stats.