**COLLINS v. UNITED STATES.**

No. 11929.

United States Court of Appeals
Ninth Circuit.

Aug. 22, 1949.

Rehearing Denied Sept. 9 and 19, 1949.

Stephens, Circuit Judge, dissented.

Gordon W. Mallatratt and John L. Mechem, Jr., San Francisco, Cal., for appellant.

James M. Carter, U. S. Attorney, Ernest A. Tolin and George M. Bryant, Asst. U. S. Attorney, Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

On August 11, 1947, an information was filed charging appellant with violations of §§ 145(b) and 145(c) of the Internal Re-

venue Code, 26 U.S.C.A. § 145(b, c). Appellant appeared in court with counsel of his own choosing and, at the request of his counsel, was given until August 15, 1947, in which to plead. On August 15, 1947, appellant again appeared in court with counsel of his own choosing and entered a plea of guilty on two counts of the information and not guilty on two counts. He was sentenced to serve 18 months on each of the two counts to which he had pleaded guilty, the sentences to run consecutively. It appears that Mr. Hammond, who represented the appellant at the time of his first appearance, and Mr. Stahlman who appeared at the time of the entry of the plea and the imposition of sentence, are associated in the practice of law and it might be well to state here (because it is important in the disposition of this appeal) that they sustain an excellent reputation for personal integrity and ability as lawyers.

On April 10 1948, within a few days of eight months after judgment, appellant addressed a letter to Judge Leon R. Yankwich, presiding at the time of the arraignment and the imposition of sentence. In the letter appellant complained of the manner in which certain searches of his home and seizure of his property were conducted by state officers. Appellant further complained that prior to the time of entering his plea of guilty in the federal court he had been confined on a state charge in the county jail for 18 months; that the quarters in which he was confined were overcrowded; that he was given a meager diet, "was physically exhausted, run down, and could not bear the thought of further stay in the county jail pending trial. Men do things under abnormal conditions which they would not do in normal circumstances." The trial judge treated the letter of appellant as a petition to set aside the judgment of conviction and to change his plea from guilty to not guilty. The court denied the petition. As to the complaints of appellant relative to the alleged misconduct of state officers the court very properly found them to be without merit, stating: "As the case was not tried and no evidence obtained by search was introduced and no motion to suppress the evidence in advance

of the trial was made, I cannot see how any question of the type urged in the petition can arise." The trial court was unable to find in the incarceration of appellant in the county jail for a considerable period of time before the entry of his plea in the federal court such circumstances as would justify permission to withdraw the plea of guilty in order "to correct manifest injustice". See, Rule 32(d), Federal Rules of Criminal Procedure, 18 U.S.C.A.

On this appeal appellant makes the argument that he did not have the effective assistance of counsel required by the Fifth and Sixth Amendments. This in the face of the fact that in each appearance in court he was represented by counsel of his own choosing who are admitted to be men of integrity and ability, and against whom, so far as the record discloses, appellant has not directed one word of criticism of their handling of the case. We find here no superficial or purely formalistic compliance with the constitutional mandate of the right to counsel of which the Supreme Court of the United States was speaking in the case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. We are not dealing with counsel assigned by the court. Counsel representing appellant were of his own choosing and they brought more to the defense of appellant than good intentions. We say this because appellant argues that good intentions are not enough and cites Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; Beckett v. Hudspeth, 10 Cir., 131 F.2d 195; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375. The cited cases have no application to the instant case because of the great dissimilarity in the facts. Here the capacity to make an understanding choice of counsel existed and there is an entire absence of "subverting factors" which would in any manner render the choice other than "clearly free and responsible". In fact, counsel representing appellant in this case had been retained by him over a considerable period of time to represent him in the state courts.

In his opening brief, at page 18, appellant states that "the point at issue is not that the counsel representing appellant at the time of the arraignment were either inade-

quate or consciously derelict in their duties,"—then proceeds to argue that the point is whether or not the physical and mental condition of appellant at the time of arraignment warranted either counsel or the court in permitting him to plead at all. That argument poses the question whether appellant's plea was made "with understanding of the nature of the charge", as required by Rule 11 of the Federal Rules of Criminal Procedure. Counsel for appellant, at the arraignment, directed the attention of the trial court to the probable effect of the 18 months confinement in the county jail which appellant had undergone. Said counsel stated in open court that it had come to his attention through the jail physician and other attaches of the jail, that appellant had deteriorated both mentally and physically during his confinement; that appellant had been hospitalized and confined in a padded cell for a period of time. He also stated that appellant's condition was such that his counsel could not give him any help, and he considered appellant's mental condition such as to render him incapable of understanding the situation or what his (appellant's) plea should be. Being thus advised of the probable mental incapacity of appellant the court conducted an examination in order that it might satisfy itself that a plea entered by appellant would be made voluntarily and with full understanding of the nature of the charge. The examination was quite extensive and searching. The answers given by appellant to the questions propounded by the court indicate a complete awareness on the part of appellant of the nature of the charge against him, the purpose of his being in court, and the consequences to him of a plea of guilty. In fact, his answers were of such a nature as to cause his counsel to remark: "He has surprised me in his answers to your Honor's questions. I know that happens on occasion." At the conclusion of the examination the Court made the following observation: "I think on the basis of this examination that he shows an awareness of his present environment, and his answers to my questions regarding the conditions in the jail, plus the general question as to the nature of the charge and the consequences, that regardless of any confusion in his mind brought about by his confinement and by brooding over his troubles, which the Lord knows are bad enough, that he understands the nature of the plea, and I would be absolutely safe in accepting it, if after further consultation with his counsel, he desires to enter it."

Thereafter a short recess was had to permit further consultation between appellant and his counsel, at the conclusion of which the defendant was arraigned and entered pleas of guilty to Counts I and II of the information and not guilty to Counts III and IV. Out of abundant caution the Court varied the arraignment procedure and instructed the clerk to ask additional questions of appellant in order to be as certain as possible that appellant had a complete knowledge of the proceedings and of the charges against him and knew the nature of the plea he entered and its result to him.

During the course of the arraignment the following questions were asked and the following answers given:

"The Clerk: Samuel D. Collins, do you understand the nature of this charge?

"The Defendant: My attorney has told me.

"The Clerk: Do you understand the nature of a plea of guilty?

"The Defendant: I do. That is all right.

"The Clerk: Do you understand that should you enter a plea of guilty the Court, without further delay or trial, can impose any sentence warranted by the law? Do you understand that?

"The Defendant: Yes, I understand that. My attorney explained it to me.

"The Clerk: Samuel D. Collins, how do you plead to Count I of this information?

"The Defendant: I plead guilty."

Appellant pleaded guilty to Count II and not guilty to Counts III and IV.

The fact that appellant was able to and did differentiate between the several counts of the information in entering his pleas, guilty as to two counts and not guilty as to two, seems to us to be a strong circumstance in support of a conclusion that he

knew exactly what he was doing and what was taking place.

The letter written by appellant to Judge Yankwich, which was by said Judge treated as a petition for a change of plea, indicates the appellant to be a man of more than ordinary intelligence with a full understanding and recollection of events prior to, at the time of, and subsequent to the entry of his plea of guilty. Yet nowhere within the four corners of that communication does he state that he was not capable of understanding the nature and quality of his act in entering a plea of guilty and its results to him. True he does state that he was motivated to a large extent in entering the plea of guilty by his confinement in the county jail. His capacity to understand, not his motive in entering the plea, is the question presented for determination. His asserted motive is not a form of compulsion which would require the trial court to grant his petition, so long as his decision was voluntarily reached and with full understanding of the facts and circumstances. No compulsion is charged to have been exerted by any officer connected with this case.

Whatever may be said as to the confusion which may have existed in the mind of appellant at different periods during the 18 months of his confinement, it was made clear to the trial court; it was clear to the Assistant United States attorney; it was clear to his counsel and it appears clear to us, that on the day of his arraignment and plea the appellant was in sufficient possession of his mental faculties to know he was in a United States District Court on a charge of a violation of the Internal Revenue Code; that he fully understood the nature of the charge and that he further knew that a plea of guilty would be an admission of guilt and subject him to imprisonment. We think we are justified in saying that it was clear to appellant's counsel that such was the mental state of appellant because it would be an unwarranted aspersion upon the integrity of counsel to say he permitted a client to plead guilty without feeling sure that the client was mentally capable of a full understanding of what he was doing.

We conclude that appellant had the effective assistance of counsel at all times and possessed the mentality which enabled him to competently make the decision to enter the plea of guilty. Complaint is made that the trial court did not give full consideration to appellant's motion to vacate. We do not agree. The trial court by reason of its handling of the arraignment and plea was familiar with all relevant evidence. The order denying the motion demonstrates that it gave due consideration to the material facts.

Order denying motion to vacate judgment and for leave to withdraw plea of guilty is affirmed.

STEPHENS, Circuit Judge (dissenting).

[The following opinion was prepared for consideration of my associates but it did not meet with their approval. I adhere to my views as therein expressed.]

This is an appeal from an order denying a motion [made under Rule 32 (d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.] to withdraw a plea of guilty and to vacate a judgment of conviction entered thereon. At the hearing prior to arraignment and plea, appellant represented by counsel waived indictment. Before the same court and represented by the same counsel, after arraignment upon information, he pleaded guilty to certain violations of the Internal Revenue Code. The motion which is the subject of appeal here was filed some eight months after the sentencing of appellant, during the term of court following that in which appellant was sentenced, and was considered and ruled upon by the sentencing court.

Appellant urges that his mental condition at the time of his plea of guilty rendered the plea incompetent. That such might be the case was brought to the attention of the district judge before appellant pleaded. The arraignment was halted temporarily while the Court questioned appellant, whereupon it was ruled that he understood the nature of the proceedings and the charges. After a short recess and consultation by appellant with his counsel, a plea of guilty was entered and accepted by the court.

A high duty burdens the judiciary to save from encroachment the personal guaranties of the Constitution of the United States. Courts must be alert to notice and condemn infringements of constitutional rights. An accused, however, while accorded special favor, may waive his rights under the Constitution if he does so understandingly and voluntarily.[1] Whether there is a proper waiver "should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357.

A plea of guilty by an accused is in effect a substitute for, and a waiver of, trial by jury, the right to which is constitutionally protected. U.S.C.A. Constitution, Amendment VI. One who so pleads may be bound thereby, but it is imperative that the chosen course of action be undertaken with full knowledge of the facts and probable consequences and preferably after legal advice. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Bergen v. United States, 8 Cir., 145 F.2d 181. Once made, a plea of guilty cannot be withdrawn as a matter of right. An application to withdraw a plea of guilty is addressed to the sound discretion of the court. The exercise of discretion is reviewable only for abuse.[2] A mere showing of a denial is insufficient. A misapprehension of appellant's rights, making it manifestly just and fair to give him the privilege to substitute pleas, would suffice.

An insane person has not the capacity to plead to an arraignment or to be tried. Youtsey v. United States, 6 Cir., 97 F. 937; Forthoffer v. Swope, 9 Cir., 103 F.2d 707. The proper criterion to determine an accused's mental capacity at the time of trial and sentence is "whether an accused has the mental capacity to comprehend his own condition with reference to the accusation pending against him and is capable of rationally conducting his defense." Moss v. Hunter, 10 Cir., 167 F.2d 683, 685. The so-called "right and wrong" test is not sufficiently inclusive.[3]

Once the matter of competency is raised, the court must have an inquiry, the type of which is discretionary. A jury trial is not a matter of right. Inquiry by the court without the testimony of experts or other evidence, by which the court would not be bound in any event, is proper if the substantial rights of the accused are protected. Youtsey v. United States, 6 Cir., 97 F. 937; United States v. Harriman, D.C.S.D. N.Y., 4 F.Supp. 186.

At the time of the arraignment here upon charges of income tax evasion, it was disclosed that appellant had been incarcerated in the Los Angeles County jail for some eighteen months immediately preceding and was about to be transferred to San Quentin following a state conviction for murder,

---

[1] Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375; McCrea v. Jackson, 6 Cir., 148 F.2d 193; Wilfong v. Johnston, 9 Cir., 156 F.2d 507; Barkman v. Sanford, 5 Cir., 162 F.2d 592; United States ex rel. Adams v. Ragen, 7 Cir., 172 F.2d 693.

[2] Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Camarota v. United States, 3 Cir., 2 F.2d 650; Fogus v. United States, 4 Cir., 34 F.2d 97; Ward v. United States, 6 Cir., 116 F.2d 135; United States v. Fox, 3 Cir., 130 F.2d 56; United States v. Colonna, 3 Cir., 142 F.2d 210; Rosensweig

v. United States, 9 Cir., 144 F.2d 30, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 612; United States v. Mignogna, 2 Cir., 157 F.2d 839, certiorari denied, Mignogna v. United States, 330 U.S. 830, 67 S.Ct. 863, 91 L.Ed. 1278; United States v. Harris, 2 Cir., 160 F.2d 507; United States v. Lias, 4 Cir., 173 F.2d 685.

[3] Ashley v. Pescor, 8 Cir., 147 F.2d 318, 320; United States v. Chisolm, C.C.S.D. Ala., 149 F. 284; United States v. Harriman, D.C.S.D.N.Y., 4 F.Supp. 186; United States v. Boylen, D.C.Or., 41 F.Supp. 724; United States v. Chandler, D.C. Mass., 72 F.Supp. 230, affirmed, Chandler v. United States, 1 Cir., 171 F.2d 921; United States v. Best, D.C.Mass., 73 F. Supp. 654; United States v. MacLeod, D.C.E.D.Pa., 83 F.Supp. 372.

that while in the county jail he had been ill and depressed and had been placed in a padded cell for a period of time, an incident left unexplained, that counsel for appellant who had dealt with him for two years complained to the court that he was not capable, due to mental deterioration, to assimilate legal advice. The statements of appellant's counsel to the court strongly tend to show that their client apparently could fasten his whipped brain only upon his intense desire to leave the county jail. Upon questioning of appellant the court directed questions, not as to whether appellant would plead guilty or not guilty but as to his counsel's advice upon the subject; not as to appellant's consciousness of guilt but as to whether his counsel's advice as to his guilt should rule his plea:

"THE DEFENDANT: * * * I talked to my attorneys and said whatever it is, I simply can't stay where I am now. Whatever it is, I have got to get out; I can't stay any longer, so I talked to him and said, 'Whatever you think I ought to do, I will do it.'

"THE COURT: They are both very reputable attorneys, and so is the representative of the United States Attorney, and they don't want you to plead guilty to the charge, regardless of what I may do in the case, unless you understand what it is all about.

"THE DEFENDANT: I can't stand it another minute." * * *

It should be remembered that the colloquy just quoted took place while the appellant was under the heaviest stresses which the court referred to as " * * * the Lord knows are bad enough." We are not convinced that the court's interrogation of appellant sufficiently disclosed the requisite understanding on the part of the accused.[4] "There must be both the capac-

---

4 The following are relevant parts of the questioning by the court:

"THE COURT: Do you know what they brought you here for?

"THE DEFENDANT: I understand I was arraigned on a tax matter. I paid my tax for 1946.

"THE COURT: The Government charges here that in 1944 you did not pay the full tax and——

"THE DEFENDANT: In 1946, while I was in the County Jail, I paid no tax.

"THE COURT: This was two years before that time.

"THE DEFENDANT: They did not tell me that.

"THE COURT: This was for 1944–1945.

"THE DEFENDANT: They did not tell me that. I paid the tax bill for 1946." * * *

"THE COURT: * * * Do you know what a plea is in a criminal case?

"THE DEFENDANT: I would say, whether you are guilty or not.

"THE COURT: Do you know what the consequences would be if you would say that you were guilty? Suppose you say you are not guilty. Do you know what follows?

"THE DEFENDANT: If I say guilty they will keep me another year in the County Jail.

"THE COURT: You understand, if you say you are guilty the Court can impose any sentence that the law allows? You understand that?

"THE DEFENDANT: I will take your word for it, your Honor.

"THE COURT: What we are trying to find out is if you understand what we are here for.

"THE DEFENDANT: My attorney told me.

"THE COURT: Your attorney feels there is a little confusion in your mind, probably brought on by confinement. Of course work out of doors would make a great difference." * * *

"THE DEFENDANT: * * * Whatever my attorneys say I will do. I will talk to him. If he says I should plead guilty——

"THE COURT: We want to find out if you are conscious of what is going on about you. * * *"

"THE COURT: * * * Before Mr. Stahlman advises you what to do, he wants to know if you understand what it is all about. Perhaps you can help him out. He does not want to advise you to plead guilty unless he is satisfied, not only on his own account that these facts are true, but that you realize that they are true." * * *

"THE DEFENDANT: * * * I talked to my attorneys and said whatever it is, I simply can't stay where I am now. Whatever it is, I have got to get out; I can't stay any longer, so I talked to him and said, 'Whatever you think I ought to do, I will do it.'

"THE COURT: They are both very reputable attorneys, and so is the repre-

ity to make an understanding choice and an absence of subverting factors so that the choice is clearly free and responsible." Frankfurter, J., concurring in Von Moltke v. Gillies, 332 U.S. 708, 729, 68 S.Ct. 316, 326. The district judge futhermore denied the motion to withdraw the plea without a hearing. Compare Kuczynski v. United States, 7 Cir., 149 P.2d 478.

To discharge the weighty responsibility placed upon him, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his" rights and desires to waive them "does not automatically end the judge's responsibility." Von Moltke v. Gillies, 332 U.S. 708, 723, 724, 68 S.Ct. 316.

The probable guilt of appellant is of no concern. The doubt we experience lies in whether his decision to plead guilty was competent under the circumstances. So-called "present insanity" is not a defense or excuse for crime, but merely impedes judicial process during its existence because the law will not enforce society's due at a time when an accused is incapable of conducting his defense.

I would reverse and remand with instructions to set aside the sentence of the court together with the plea of guilty, and to enter the plea of not guilty.

---

sentative of the United States Attorney, and they don't want you to plead guilty to the charge, regardless of what I may do in the case, unless you understand what it is all about.

"THE DEFENDANT: I can't stand it another minute." * * *

"THE COURT: I am satisfied from the examination I have given him that he knows what this proceeding is about. I don't claim to be a psychiatrist or to determine things from a neurological standpoint, but applying the test which we use in the federal court, we accept the test of competency as to one's ability to distinguish between right and wrong. We also give recognition to modern psychology, but we recognize that a person may know the difference between right and wrong and still act under a compulsion which he cannot resist. * * * I think on the basis of this examination, that he shows an awareness of his present environment, and his answers to my questions regarding the conditions in the jail, plus the general question as to the nature of the charge and the consequences, that regardless of any confusion in his mind brought about by his confinement and by brooding over his troubles, which the Lord knows are bad enough, that he understands the nature of the plea, and that I would be absolutely safe in accepting it, if after further consultation with his counsel, he desires to enter it."

After a short recess during which apellant consulted with his counsel, arraignment took place, and appellant pleaded as follows:

"MR. STAHLMAN: * * * 'I talked with the defendant, and before the pleas are entered, he wanted me to state whether he should plead or not. I told him that would have to be a matter of his own judgment. I went over certain facts with him, after talking with the federal attorney, and certain evidence that I had seen. We are ready to proceed.' * * *

"THE CLERK: Samuel D. Collins, do you understand the nature of this charge?

"THE DEFENDANT: My attorney has told me.

"THE CLERK: Do you understand the nature of a plea of guilty?

"THE DEFENDANT: I do. That is all right.

"THE CLERK: Do you understand that should you enter a plea of guilty the Court, without further delay or trial, can impose any sentence warranted by the law? Do you understand that?

"THE DEFENDANT: Yes, I understand that. My attorney explained it to me.

"THE CLERK: Samuel D. Collins, how do you plead to Count I of this information?

"THE DEFENDANT: I plead guilty.

"THE CLERK: How do you plead to Count II of this information?

"THE DEFENDANT: Guilty."